The decision of this case may well be derived from the evidential facts without any special engagement of specific principles of law and equity. The facts themselves, as I assemble them from the credible evidence, compose a story, but not an unprecedented one, of the virtues and deficiencies, the hopes and despairs of family relations.
The defendant, Mary Banyas, was the former wife of the plaintiff's brother who died some years ago leaving his widow and, I think, five infant children in impecunious circumstances. The plaintiff rescued them from impoverishment. His sister-in-law became his spouse, and her children thereupon shared the comforts and protection of his household.
Both Mr. and Mrs. Banyas were thrifty and frugal, and in 1939 they were able to acquire as tenants by the entirety, for a modest down-payment and upon instalment-payment terms, a two and a half story, six-room, cottage in the Borough of Manville. Their respective earnings they continued to place in the common hoard into which the children as they became older proudly dropped their meager contributions. It was from this family treasury that the balance of the purchase price of *Page 202 
the cottage was amortized and a bank account established for convenience in the name of Mrs. Banyas.
All was well. Mr. Banyas was attentive to his regular employment, but it is said that discontentment follows ambition like a shadow, and he seems to have resolved to enliven those interludes of unemployment on Saturday afternoons and Sundays by an indulgence in alcoholic beverages. The occasional adventure became a frequent practice and ultimately an inveterate custom. The village police came to regard it as an inauspicious omen if Banyas was not drunk on Saturday night.
It may be stated on his behalf that when, on such occasions, he had drained his bottle of pleasure to the bottom, he would whenever possible drift in some fluctuating course back to his home, but with the change of environment the prickly points of his previous joviality at once became thorns of irascibility, and to this there was one assuasive and immutable outcome — the policeman was summoned, Banyas was deported to the local "jailhouse" where, according to the official records, he was temporarily detained without due process of law for "safe keeping."
There is reason to infer that during the days of his occupational employment certain remorseful sensibilities were stinging the conscience of Mr. Banyas. It is not for me to commend or criticize the result of his cogitations on the subject. Suffice to reveal the fact that he eventually submitted to his wife the proposal that if she would provide him with $2,000, which would be approximately the equivalent of one-half of the cost of their residence, he would convey to her his estate in it and rejoin his relatives in Europe.
It is not evident that the project was alluring to Mrs. Banyas. It was his insistence upon its consummation that brought Mr. and Mrs. Banyas to the office of Mr. Adam B. Chase, an attorney, to whom the terms of the proposed compact were divulged. On January 30, 1946, a deed was duly executed and acknowledged by Mr. and Mrs. Banyas which for pragmatical reasons vested the title in Marion Banyas (now Voorhees), the daughter of Mrs. Banyas by her previous marriage. Mrs. Banyas with the assistance of one or more of her children and *Page 203 
the surrender of her war bonds congregated the requisite $2,000, for which Mr. Banyas signed and delivered to her the following significant and illuminative receipt:
"Received of Mrs. Mary Banyas the sum of Two Thousand Dollars ($2,000) in full settlement of any and all claims that I have against her, also a conveyance of four lots by Deed dated January 30, 1946, to the purchaser.
"Frank Banyas
Dated: January 30, 1946"
Mr. Chase, who had been acquainted with Mr. Banyas and who had at times graciously exercised his influence to shorten Mr. Banyas' periodical confinements for "safe keeping," testified that on the occasion of the transaction at his office, Mr. Banyas was not under the influence of intoxicating liquor, but was fully informed and manifestly cognizant of the true nature of his acts and their consequences. Mr. Banyas appeared to him to be the determined and dominant participant. There is nothing, circumstantially or otherwise, to impugn the credibility of the testimony of Mr. Chase.
Although it is the achievement of January 30, 1946, that the plaintiff now desires to disorganize, yet I allude briefly to some of the subsequent events which seem to exhibit retrospective significance.
To decorate the present visage of his claim, the plaintiff asserts that on the day following January 30, 1946, he and his wife returned to the office of Mr. Chase to rescind the bargain. His assertion collapses under the superior weight of the contradictory evidence. The truth is that the plaintiff began to reconsider unfavorably his expressed intention to embark to Europe, and a month or more having meanwhile elapsed he did persuade his wife again to accompany him to the office of Mr. Chase where it was mutually agreed to re-establish the statusquo ante. Deeds were thereupon executed to restore the title of the residential premises to Mr. and Mr. Banyas as tenants by the entirety and handed to Mrs. Banyas. It then transpired that Mr. Banyas was either unprepared or undisposed to repay the $2,000 to his wife. He subsequently suggested that he repay one-half of the sum. His present attitude is that most of *Page 204 
the $2,000 came from his earnings and that he is under no obligation to repay any part of it. The deeds last mentioned have remained in the exclusive possession of Mrs. Banyas, undelivered and unrecorded.
The evidential significance of the subsequent negotiations inheres in its exposure of the improbability of the plaintiff's claim that in relinquishing his estate in the property he was a submissive victim over whom his wife designedly and successfully exerted a regnant and dominant influence to her gain and to his irreparable disadvantage.
Except when elsewhere detained, the plaintiff has continued to occupy a bedroom and to receive his meals at the home for a stipulated charge payable to his wife each Friday, to which obligation by virtue of a practical construction two days of grace are allowed. If, however, he is in default in the payment of his board on Monday morning, service at his place at the table is suspended.
This action was not instituted until June 8, 1948. I am unable to perceive amongst the circumstances of this case any equitable need for the intervention of the court. Judgment for the defendants.